NEW YORK STOCKS, INC., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 5924.   Promulgated February 17, 1947.

*Harris Berlack, Esq.*, for the petitioner.
*Francis X. Gallagher, Esq.*, for the respondent.

OPINION.

HARRON, *Judge*: Respondent contends that the sums which were distributed to stockholders, upon the redemption of stock, as shares of net earnings for the taxable year up to redemption dates as part of lump sums paid upon the redemption of shares of stock were in the nature of "preferential dividends" as defined in section 27 (h) of the Internal Revenue Code,[1] and that, therefore, they can not be considered as "dividends paid" for the purpose of computing the basic surtax credit under section 27 (b) (1) of the code.[2] The amount in dispute is $40,932.69. Petitioner claims that the total amount of "dividends paid" in the taxable year for purposes of the basic surtax credit is $297,501.22. Respondent has disallowed $40,932.69 of the total sum claimed.

The parties are agreed that petitioner is a mutual investment company as defined in section 361, the pertinent parts of which are set forth in the margin.[3] Under Regulations 103, section 19.361–2 (c), p. 598, a mutual investment company may consider as "taxable dividends paid" to its shareholders for purposes of section 361 (a) (4), "the propor-

---

[1] SEC. 27. CORPORATION DIVIDENDS PAID CREDIT.

\* \* \* \* \* \* \*

(h) PREFERENTIAL DIVIDENDS.—The amount of any distribution (although each portion thereof is received by a shareholder as a taxable dividend), not made in connection with a consent distribution (as defined in section 28 (a) (4)), shall not be considered as dividends paid for the purpose of computing the basic surtax credit, unless such distribution is pro rata, with no preference to any share of stock as compared with other shares of the same class, and with no preference to one class of stock as compared with another class except to the extent that the former is entitled (without reference to waivers of their rights by shareholders) to such preference.

\* \* \* \* \* \* \*

[2] SEC. 27. CORPORATION DIVIDENDS PAID CREDIT.

\* \* \* \* \* \* \*

(b) BASIC SURTAX CREDIT.—As used in this chapter the term "basic surtax credit" means the sum of:

(1) The dividends paid during the taxable year, increased by the consent dividends credit provided in section 28, and reduced by the amount of the credit provided in section 26 (a), relating to interest on certain obligations of the United States and Government corporations;

\* \* \* \* \* \* \*

[3] SUPPLEMENT Q—MUTUAL INVESTMENT COMPANIES.

SEC. 361. DEFINITION.

(a) IN GENERAL.—For the purposes of this chapter the term "mutual investment company" means any domestic corporation (whether chartered or created as an investment trust, or otherwise), other than a personal holding company as defined in section 501, if—

\* \* \* \* \* \* \*

(4) An amount not less than 90 per centum of its net income is distributed to its shareholders as taxable dividends during the taxable year; and

(5) Its shareholders are, upon reasonable notice, entitled to redemption of their stock for their proportionate interests in the corporation's properties, or the cash equivalent thereof less a discount not in excess of 8 per centum thereof.

tionate share of the net earnings of the current year to the date of redemption distributed to the shareholder upon redemption [of stock]." Thus, in determining whether petitioner met the statutory requirement set forth in section 361 (a) (4), of having distributed not less than 90 per cent of its net income to its shareholders as taxable dividends during the taxable year, it was correct for both petitioner and respondent to treat the sum of $40,932.69, involved in the issue presented, as part of the distributions to shareholders.[4]

In its argument on the question presented, petitioner contends, *inter alia*, that it is inconsistent to treat the $40,932.69 as distributions of taxable dividends to stockholders for the purposes of section 361 (a) (4), and to deny petitioner a basic surtax credit for the same amount under section 27 (b) (1).

We think this argument lacks merit and can be disposed of briefly. Section 27 (h) expressly recognizes that distributions which are in the nature of "preferential dividends" may be received by the shareholder as taxable dividends. The Congress has not seen fit to exempt mutual investment companies from the restriction imposed upon section 27 (b) (1) by section 27 (h). There is no implicit statutory inconsistency in allowing a taxpayer to treat a distribution of earnings in one way under one section of the statute, and to restrict a taxpayer from taking the same distribution of earnings into consideration for the purposes of an entirely different section of the statute. Section 27 (b) (1) and section 27 (h) are general and apply to corporations, in general. While mutual investment companies are treated as a special class of corporations under Supplement Q of the code, the basic surtax credit which is allowed in computing Supplement Q net income, as defined in section 362 (a), is to be computed under the section applicable to corporations in general, namely, section 27 (b) (1). The only exception which the Congress has allowed to mutual investment companies in computing their basic surtax credit is that paragraphs 2 and 3 of section 27 (h) are not to be applied. It is plain from reading section 362 (a)[5] that the Congress did not intend to exempt mutual investment companies from the restrictions contained in section 27 (h).

---

[4] Petitioner's net income, as adjusted by respondent, was $293,935.86. Petitioner paid the sum of $256,568.53 as ordinary cash dividends to its stockholders during the taxable year. This sum was less than 90 percent of petitioner's net income; 90 percent being about $264,542.27. The proportionate shares, of net earnings paid to stockholders who surrendered stock for redemption during the taxable year was $40,932.69. That sum has been added to the $256,568.53 of ordinary cash dividends to arrive at a total sum of $297,501.22 which petitioner "distributed to its shareholders as taxable dividends during the taxable year" for purposes of the statutory definition set forth in section 361 (a) (4).

[5] SEC. 362. TAX ON MUTUAL INVESTMENT COMPANIES.

(a) SUPPLEMENT Q NET INCOME.—For the purposes of this chapter the term "Supplement Q net income" means the adjusted net income minus the basic surtax credit computed under section 27 (b) without the application of paragraphs (2) and (3).

We turn therefore to consideration of the contention that under section 27 (h) the distributions in question were in the nature of preferential dividends. Respondent relies upon the holding in *May Hosiery Mills, Inc.*, 42 B. T. A. 646, 650; affd., 123 Fed. (2d) 858. This Court considered there the provisions of section 27 (g) of the Revenue Act of 1936, which was in substance the same as section 27 (h) of the Internal Revenue Code. It is to be noted, however, that the wording of section 27 (g) in the Revenue Act of 1936 was somewhat different in that there was a provision that no dividends paid credit should be allowed with respect to any distribution unless the distribution was "equal in amount" as well as "pro rata." The words "equal in amount" were omitted in the 1938 Revenue Act, section 27 (h).[6]

The parties appear to be agreed that the distributions involved which included the total sum in question of $40,932.69, were made in redemption of stock. Therefore, we do not have a distribution in the nature of a dividend *per se*. But that was true in *May Hosiery Mills, Inc.*, where a dividends paid credit was claimed in connection with sinking fund payments made in redemption of preference stock. The question presented here is a special one, in view of the nature of petitioner's business and its system of redeeming special stock upon the election at any time of stockholders. This is the first case involving the application of section 27 (h) to a mutual investment company.

The requirements of section 27 (h) which are material in this case are the first two set forth therein: The distribution must be pro rata, and there must not be any preference to any share of stock as compared with other shares of the same class, in order that the distribution may be considered as a "dividends paid."

Under the rule of the *May Hosiery Mills* case, there is a preferential dividend involved in the distribution of earnings on the redemption of stock if there is no plan for redeeming all of the shares of a class of stock, or a proportionate amount from each stockholder, on the same terms and during some definite period. Thus, in the *May Hosiery Mills* case, the corporation was required to set aside 15 per cent of its net earnings in a sinking fund to redeem its preference shares before dividends could be paid on common stock. The preference shares were callable by the corporation at a fixed price of $55 a share. In the event the amount in the sinking fund totaled $27,500, the fund had to be applied in redemption of the preference shares. During the taxable year the corporation purchased in the open market through a broker, from such stockholders only as offered their stock for sale,

---

[6] See Report of the Ways and Means Committee, H. Rept. No. 1860 (75th Cong., 3d sess.), C. B. 1939–1 (part 2), p. 744, where it is said "* * * the words 'equal in amount,' being regarded by the committee as surplusage in existing law and apparently being productive of some confusion, having been eliminated from the new provision in the interest of clarity."

891 shares of its outstanding preference stock. The shares were purchased from some, but not all, of the holders of preferred stock at different times and in varying amounts. We held that the earnings distributed on the redemption of the stock were preferential dividends, not entitling the corporation to a dividends paid credit, since the corporation intended to, and did, purchase the shares from only a portion of the holders of the preference stock.

The restriction in section 27 (h) against preferential dividends applies to distributions in liquidation on redemption of stock as well as to ordinary dividend distributions.

Since the distributions involved are regarded as made in redemption of stock, the issue is the same as that considered in *Forstner Chain Corporation*, 45 B. T. A. 19, and the same holding must be made here. In the *Forstner Corporation* case, the corporation had outstanding preferred and common stock. One of the stockholders desired to sell part of his preferred stock to the corporation. The directors decided to retire not more than 50 shares of the preferred stock. All of the stockholders were given the right to offer for retirement their *pro rata* proportion of preferred shareholdings. All signified their intention of waiving their rights to have any of their stock retired except the one stockholder who originally expressed that desire. The corporation accepted 38 shares from him, paid for the stock, and retired it. The corporation claimed that it was entitled to a dividends paid credit for computation of surtax on undistributed profits in respect of the distribution made in redemption of 38 shares of stock. The corporation contended that the distribution was not preferential, because all the stockholders could have surrendered stock for retirement. The petitioner makes the same contention here, since all of the holders of special stock had the right to offer stock for redemption at their own option. We rejected that contention in *Forstner Corporation* upon authority of *May Hosiery Mills*. We must reject the contention here upon the same authority. Respondent's disallowance of the dividends paid credit to this petitioner is sustained. See also *Budd International Corporation*, 45 B. T. A. 737; *Safety Convoy Co.* v. *Thomas*, 139 Fed. (2d) 219; *Monte Glove Co.*, 44 B. T. A. 539.

*United Artists Theatre Circuit, Inc.*, 1 T. C. 424, which petitioner relies upon, is clearly distinguishable. In that case a dividend was declared on all preferred stock of a class and all was retired under a plan of recapitalization. In this case the facts are materially different—there was no plan to retire all of the shares of a class of stock. In *United Artists* it appears that the rule of *May Hosiery Mills* was considered inapplicable, since it appears from the report in the case that respondent did not rely upon it and it was not considered.

Reviewed by the Court.

*Decision will be entered for the respondent.*

KERN, and OPPER, *JJ.*, dissenting: In the case before us each of the owners of a class or "series" of stock has the same right as that of every other owner of that stock to surrender his shares and to obtain a distribution of accumulated earnings to the date of redemption. This right existed from the time of the issuance of the stock. It could not be availed of by any shareholder, even with the connivance of the corporation, to obtain preferential treatment over some other shareholder, on the one hand, or to escape his proportionate tax liability on the other. While a stockholder remains such his dividend rights and tax liabilities are fixed and equal to those of all other shareholders. When he decides to withdraw from the corporation, his dividend rights and tax liabilities are likewise fixed and equal. There was, hence, no possibility of overreaching, on the one hand, or tax avoidance on the other.

The authorities relied upon in the majority opinion do not compel the conclusion it reaches. In *May Hosiery Mills, Inc.*, 42 B. T. A. 646, while the corporation was obligated to redeem some preference stock out of earnings, there was no stipulation as to the proportion applicable to the individual stockholders, and none had a right to the redemption of his stock or any part of it. *Forstner Chain Corporation*, 45 B. T. A. 19, involved a specific arrangement between the corporation and a single stockholder long after the stock was issued, and not called for by its terms. Although the formal corporate resolution purported to confer similar rights on the other shareholders, it was transparently clear that all intended a distribution which was preferential to the single shareholder involved "as compared with other shares of the same class."

In *United Artists Theatre Circuit, Inc.*, 1 T. C. 424. 430, after quoting a statement by the Ways and Means Committee, H. R. 1860, 75th Cong., 3d sess., this Court said:

These observations * * * lend support to our conclusion that where a distribution is made available in conformity with the rights of each stockholder, where no act of injustice to any stockholder is contemplated or perpetrated, where there is no suggestion of a tax avoidance scheme, and where each stockholder is treated with absolute impartiality, the distribution is not preferential within the meaning of the statute.

Because we believe that to be a correct statement of the principle involved here, and that its application would lead to an allowance of the dividends paid credit to such mutual investment companies as petitioner, we respectfully dissent.

HARLAN, *J.*, agrees with this dissent.